SCOTT N. SCHOOLS (SC 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

JEFFREY R. FINIGAN (CSBN 168285)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7232
    Facsimile: (415) 436-7234
    Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>     Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> MICHAEL EDISON, ) <br> ) <br>     Defendant. ) | No. CR 07-0074 WHA <br><br> UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO QUASH SUBPOENA <br><br> Date:  January 15, 2008 <br> Time:  2:00 p.m. <br> Court: Hon. William H. Alsup |
| UNITED STATES OF AMERICA, ) <br> ) <br>     Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> DEBRA EDISON, ) <br> ) <br>     Defendant. ) | No. CR 07-0479 WHA |

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA

**TABLE OF CONTENTS**

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Background Facts & Procedural Posture. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. Debra Edison fails to meet her burden of proof that the attorney/client privilege applies to her communications with her husband's attorney, Mr. Thorman... . . . . 6

    B. Michael Edison fails to meet his burden of proof that his communications with Mr. Thorman regarding the origin and production of the purported loan documents was for the purpose of obtaining legal advice and they are therefore not protected by the attorney/client privilege.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C. Information from Mr. Thorman related to the origin and production of the two purported loan documents is not protected by the work-product doctrine because the documents were not created in anticipation of litigation and that privilege was waived once the documents were produced... . . . . . . . . . . . . . . . . . . . . . . . . 10

    D. The crime-fraud exception to the attorney/client privilege applies because the Edisons were engaged in a scheme to obstruct justice and used Mr. Thorman in furtherance of that scheme.. . . . . . . . . . . . . . . . . . . . 11

IV. Speedy Trial Act Status. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Griffith v. Davis*, 161 F.R.D. 687 (C.D. Cal. 1995)... 8, 9

*In re Grand Jury Proceedings*, 87 F.3d 377 (9th Cir. 1996)... 11, 12

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900 (9th Cir. 2004)... 10

*United States v. Abrahams*, 905 F.2d 1276 (9th Cir. 1990)... 6

*United Sates v. Keplinger*, 776 F.2d 678 (7th Cir. 1985)... 7, 8

*United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988)... 7

*United States v. Salsedo*, 607 F.2d 318 (9th Cir. 1979)... 10

**FEDERAL STATUTES, RULES, AND GUIDELINES**

18 U.S.C. § 1519... 5

18 U.S.C. § 3161(h)(8)(B)(iv)... 13

Fed. Rule Civil Proc. 26(b)(3)(B)... 10

**I.    Introduction**

Defendants Michael and Debra Edison have filed separate Motions to Quash the grand jury subpoena served upon Michael Thorman, Esq., (the "Motions"). The issues in the Motions overlap, so the United States responds and opposes both Motions herein. The government intends to question Mr. Thorman about communications with Michael and Debra Edison related to the origin and production of two purported loan documents produced to the United States during the discovery process in Michael Edison's pending criminal case. The information sought by the Thorman subpoena is not covered by the attorney/client privilege. Nevertheless, in the event the Court finds that the Thorman subpoena seeks attorney/client information, the crime-fraud exception applies and the Motions should be denied.

**II.    Background Facts & Procedural Posture**

On December 22, 2006, a complaint was filed against Michael Edison charging him with wire fraud in relation to his scheme to defraud Jean Phleger. The Honorable Bernard Zimmerman, U.S. Magistrate Judge, issued an arrest warrant for Michael Edison simultaneously with the complaint, and on February 10, 2007, he was arrested in Atlanta Georgia. The defendant demanded a detention hearing in Atlanta and was ordered detained and subsequently transferred to the Northern District of California. The defendant has been in U.S. Marshal custody since his arrest.

On February 13, 2007, a grand jury in the Northern District of California indicted Edison and he is charged by indictment in case CR07-0074 WHA with three counts of wire fraud stemming from his scheme to defraud Jean Phleger. As set forth in the indictment, the defendant essentially lied to Ms. Phleger about financial services he would purportedly perform for her. Instead, he gained access to Ms. Phleger's personal and financial information and took out several loans in Ms. Phleger's name against property she owned in San Francisco. The defendant then stole more than $2,000,000 from Ms. Phleger by misappropriating proceeds from those loans for his own personal use. When Ms. Phleger and her representatives became suspicious of the defendant's activities and inquired of the defendant regarding his handling of Ms. Phleger's finances, the defendant fled his last known location and hid from Ms. Phleger. Ms. Phleger has

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA           2

1 stated that she never gave Michael Edison permission to take her money or to do anything with it
2 other than pay her bills and make payments to certain family members.
3    On or about April 3, 2007, and while Michael Edison was in custody, the Alameda
4 County Sheriff's Office intercepted a letter from Michael Edison to his wife, Debra Edison.
5 Declaration of Mandy Britton, Exhibit A.  The letter starts with the words "Read and Destroy."
6 The letter then begins "This letter is the 'most important thing I have Ever asked you to do.'"
7 Michael Edison advised Debra Edison "you must stay in Switzerland until we can determine it is
8 safe for you to return."  In the letter, Michael Edison requested that Debra Edison assist him in
9 gathering documents that were stored in various places.  Debra Edison was instructed to gain
10 control over certain documents and have them sent to her in Switzerland.  Some of the
11 instructions Michael Edison gave Debra Edison are as follows:

12 •    "We 'must' manage the release of the documents that are in the black suitcases –
13       some need to be destroyed and others worked on."
14 •    While referring to documents they held in storage in New Jersey, Michael Edison
15       told her that there were three "larger boxes that Hold the most important Records
16       personnal (sic) that we don't want 'anyone' to get."  Edison told his wife "you can
17       send them slowly but you must get them out of their now."
18 •    Michael Edison told Debra Edison that she would have to sort the files in order to
19       send documents back to the attorneys and that "How well we do this will spell the
20       difference between Jail & Freedom (sic) (emphasis in original)."

21    In the letter, Michael Edison also provided detailed instructions for Debra Edison to
22 create false documents to make it appear as if Jean Phleger loaned Edison the money he was
23 indicted for stealing.  Specifically, Edison's letter told Debra Edison the following:

24 •    "You 'must help me create' a Note that is missing from the files you have it is the
25       most important document and ill send in via separate over (sic) but you must
26       make sure it is created without any errors.  Very Carefully follow the following . .
27       . Don't go near or ever talk to anyone about this"
28 •    Michael Edison wrote detailed steps for Debra Edison to follow as she created this

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA        3

1    document. The steps included instructions on what type font (new times roman)
2    to type the document in and what size paper to use. Edison also instructed Debra
3    Edison to find someone from "The Yellow Pages" to type the document. She was
4    instructed to not use any computer that they owned to create this document and
5    she was told to stand over the hired individual while the document was being
6    typed. Michael Edison told Debra Edison to pay cash, to obtain a copy of the
7    computer disk and to destroy the disk.

8  • Michael Edison told Debra Edison to have the hired individual run a completed
9    draft of the document on 9 ½" paper with his original signature at the bottom and
10   to use "the ten pages I am signing in blank." Debra Edison was told to "make
11   sure she gets the Note in such away that the text matches."

12 • Michael Edison instructed Debra Edison to make three copies once a good
13   original note was completed. She was then instructed to destroy the original, the
14   computer disk and any receipts for service.

15 • Edison then states: "All we need is a copy of the note and the memorandum which
16   I sent you earlier. Did you get it? If so tell me that Rosie's Had a Birthday on the
17   phone when it's done - then it needs to be put with some other files that we send
18   to the attorneys - send it with a bunch of other paper and let them find it by
19   themselves."

20    Michael Edison ended the text of his letter by writing "Please help me with this. It's the
21 only thing that will allow me to win this thing." Drafts of a handwritten Promissory Note and a
22 Memorandum purporting to document a loan from Jean Phleger to Michael Edison were included
23 with the letter. Both drafts were dated August 1, 2005. The Promissory Note stated that Michael
24 Edison promised to pay Phleger $2,200,000 with interest accruing at eight percent. The principal
25 and interest were due on or before August 1, 2008. The note is signed only by Michael Edison.
26 On the bottom of the draft Promissory Note are the words "Make Sure Spelling is Correct Very
27 Important." The draft Memorandum is from Michael Edison to Jean Phleger. At the top of the
28 document it states "CHECK SPELLING & GRAMMAR." The document thanks Jean Phleger

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA         4

1  for her support for the development stage of Michael Edison's technology investments.

2  On June 8, 2007, Michael Edison's then-attorney, Michael Thorman, told AUSA Jeffrey Finigan and FBI Special Agent Mandy Britton that he obtained documents from Debra Edison purportedly evidencing the fact that Michael Edison borrowed the money from Phleger that he was indicted for stealing. Britton Dec., ¶3. Thorman stated that he had copies of a promissory note and a memorandum of understanding. On June 21, 2007, Mr. Thorman produced a Promissory Note and a Summary Memo of Loan Agreement Between Jean Phleger and Edison to AUSA Finigan. Britton Dec., Exhibit B. The Promissory Note was dated August 1, 2005 and was signed only by Michael Edison. The loan amount per the note was $2,250,000. The Summary Memo of Loan Agreement Between Jean Phleger and Michael Edison produced by Thorman was dated August 2, 2005. The memo was signed only by Michael Edison.

On June 28, 2007, based on the intercepted letter and the documents from Mr. Thorman, a complaint was filed against Debra Edison charging her with obstruction of justice in violation 18 U.S.C. § 1519. On July 24, 2007, Debra Edison waived indictment and was charged by Information in case CR07-0479 WHA with one count of obstruction of justice.

On July 6, 2007, Mr. Thorman was served with a subpoena to testify before the grand jury. Mr. Thorman subsequently moved to withdraw from representing Michael Edison due to the obvious conflict of interest that developed when Michael and Debra Edison used Mr. Thorman to produce fraudulent documents to the United States during discovery in an attempt to obstruct justice by making it appear as if the victim loaned Michael Edison the money he stole from her. This Court granted Mr. Thorman's motion to withdraw on December 11, 2007. Mr. Thorman was scheduled to appear before the grand jury on December 18, 2007, but that appearance has been postponed pending the dispositions of the Motions.

On December 18, 2007, and in light of the declarations filed in support of the Motions, Agent Britton and AUSA Finigan interviewed Mr. Thorman. Mr. Thorman stated that he had a fee agreement with Michael Edison only and that Debra Edison was never his client. Mr. Thorman also stated that he never advised or instructed Debra Edison to create any documents. He only asked her to send documents to him that allegedly already existed at the time he dealt

with her.  Britton Dec., ¶4.

### III. Argument

Michael Edison's Motion argues that the Thorman subpoena should be quashed because it seeks information protected by the attorney/client privilege and work product doctrine.  He includes communications between Mr. Thorman and his wife Debra Edison under the theory that she was acting as his agent.  Debra Edison's Motion is based upon her claimed reasonable belief that an attorney/client relationship existed between her and Mr. Thorman.  The Motions lack any legal or factual support and should be denied for several reasons: (1) there was no attorney/client relationship between Debra Edison and Mr. Thorman; (2) Michael Edison's communications with Mr. Thorman regarding the origin and production of the purported loan documents were not made for the purpose of seeking legal advice and are therefore not protected by the attorney/client privilege; (3) the work-product doctrine is inapplicable because communications related to the origin and production of the documents do not qualify as work-product; (4) any privilege related to work-product was waived when the documents at issue were voluntarily produced; and (5) since any attorney/client communications related to the documents were in furtherance of the Edisons' scheme to obstruct justice, the crime-fraud exception applies and the protection of the privilege is unavailable.

**A. Debra Edison fails to meet her burden of proof that the attorney/client privilege applies to her communications with her husband's attorney, Mr. Thorman.**

Debra Edison's Motion claims the Thorman subpoena should be quashed because she allegedly had a "reasonable expectation of confidentiality" in her communications with Mr. Thorman so that the attorney/client privilege, work-product doctrine, and some vague, undefined "duty of loyalty," therefore prohibit his testimony.  But for this false claim of an attorney/client relationship, Debra Edison would lack standing to challenge the Thorman subpoena and the Motion should be denied.

The burden of establishing the existence of an attorney/client privilege always rests with the proponent of the privilege.  *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990).  The privilege applies "only if the party claiming the privilege is or sought to become a client."

*United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988); citing *United Sates v. Keplinger*, 776 F.2d 678 (7th Cir. 1985). An attorney/client relationship requires the proponent to manifest an intent to seek counsel and a person's "subjective belief" that a conversation is privileged is not by itself sufficient to establish the privilege. *Keplinger*, 776 F.2d at 700.

Debra Edison fails to state any credible facts establishing a reasonable basis to believe Mr. Thorman was acting as her attorney. There is no evidence she was or sought to become Mr. Thorman's client. According to her, the following factors form the basis for her alleged reasonable belief that an attorney/client relationship existed between her and Mr. Thorman:

- she conferred with Mr. Thorman privately on a regular basis regarding both the civil and criminal matters in which Michael Edison was named (Debra Edison was not named in any of them);
- she understood that an "adverse finding" against Michael Edison in any of his actions would subject her to "personal and financial consequences"; and
- it was her "expectation that Mr. Thorman provided legal counsel for the benefit of the marital community."

Motion by Debra Edison at 5. Mr. Thorman's perception of his relationship with Debra Edison is markedly different:

- Mr. Thorman had a fee agreement with Michael Edison only;
- Mr. Thorman never advised Debra Edison he was her attorney;
- Mr. Thorman never even met Debra Edison in person until after she produced the purported loan documents to him;
- Mr. Thorman did not consider Debra Edison to be his client; and
- Mr. Thorman did not represent Michael Edison in his civil matters.

There are no facts in the record justifying a reasonable belief that Mr. Thorman was acting as Debra Edison's attorney.[1] In *Keplinger*, the Seventh Circuit declined to recognize an

---

[1] The caveat here is that the government is not privy to Debra Edison's Second Declaration.

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA        7

attorney/client relationship because the facts did not establish a reasonable basis for believing one existed:

> The district court here found that defendants had failed to demonstrate the existence of several necessary requirements for creation of individual attorney-client relationships between themselves and the IBT corporate attorneys. In particular, the court found that no express agreement for individual representation was made, nor did any of the defendants ever ask the attorneys directly or indirectly to represent him individually. In addition, the court found that the circumstances were not such as to support a finding of any implied individual representation. The defendants never sought individual legal advice or asked questions relating to personal representation, and, quite importantly, never made any confidential statements of an incriminating nature to the attorneys, from which it could be inferred that the defendants believed that the attorneys were representing them individually. Neither attorney believed they represented the defendants individually, nor did they believe the defendants thought they enjoyed such representation. *Id.*

Likewise, there is no evidence of Debra Edison manifesting an intent to have Mr. Thorman act as her counsel with respect to her involvement with producing the purported loan documents. For example, there are no facts showing that any of Debra Edison's conferences were for the purpose of seeking "legal advice" versus simply obtaining updates as to her husband's status. *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("Because the attorney-client privilege withholds relevant information from the fact-finder, it protects only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege. As stated by the Ninth Circuit, the attorney-client privilege should apply only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client."). Thus, similar to the Seventh Circuit in *Keplinger*, this Court should decline to find a basis for an attorney/client privilege covering communications between Debra Edison and Mr. Thorman related to the origin and production of the two purported loan documents.

Further, Debra Edison's position leads to at least two very illogical conclusions. Her theory would mean that Mr. Edison's children, wherever they are located, can also invoke the attorney/client privilege with respect to Mr. Thorman's communications because, as Mr. Edison's potential heirs, Mr. Thorman must be providing legal counsel for the "familial community." Her argument also leads to the illogical conclusion that every husband and wife in California now possesses a reasonable expectation of an attorney/client relationship with the

attorney for his or her spouse because "adverse findings" can subject the "marital community" to negative consequences. These absurd results are obviously not the law and they underscore the specious nature of Debra Edison's Motion.

After creating an alleged belief about Mr. Thorman, Debra Edison then attempts to manufacture reasonableness by placing her claimed belief against the backdrop of California community property law. Debra Edison Motion 5-6. This argument is blatantly misleading because the Edisons do not reside in California and have no assets. The only reason they are here is because they defrauded a resident of the NDCA and Michael Edison has been declared a significant flight risk. Further, both of the Edisons have court-appointed counsel based upon sworn affidavits that they do not have any resources to pay for counsel. It is impossible for this "California community property theory" to form the basis of Debra Edison's alleged reasonable expectation that her communications with Mr. Thorman were covered by the attorney/client privilege. The Court should summarily reject this contrived argument and deny Debra Edison's Motion.

**B. Michael Edison fails to meet his burden of proof that his communications with Mr. Thorman regarding the origin and production of the purported loan documents was for the purpose of obtaining legal advice and they are therefore not protected by the attorney/client privilege.**

Just like Debra Edison, Michael Edison has the burden of establishing each element of the attorney/client communication in order for the privilege to apply. The first element is that the communication was made in order to seek legal advice. *Davis, supra*, 161 F.R.D. at 694. Michael Edison has not filed a declaration setting forth any facts in support of this element and his Motion must be denied. As the record stands, the only role Mr. Thorman played in this process was to simply ask Debra Edison to send him documents that Michael Edison falsely advised him already existed. Michael Edison apparently told Mr. Thorman that the documents existed and that Debra Edison would locate them for Mr. Thorman. He did not communicate with Mr. Thorman about these documents to obtain any legal advice and Michael Edison's Motion should be denied.

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA          9

**C. Information from Mr. Thorman related to the origin and production of the two purported loan documents is not protected by the work-product doctrine because the documents were not created in anticipation of litigation and that privilege was waived once the documents were produced.**

Communications between Mr. Thorman and the Edisons related to the two purported loan documents do not constitute work-product. The defendants bear the initial burden of establishing the doctrine applies and both defendants have conceded – as they must – that the two purported loan documents are not work-product because, at least ostensibly, they were not prepared in anticipation of litigation. *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900 (9th Cir. 2004) (documents at issue were created by investigator at direction of attorney in anticipation of litigation). Mr. Thorman has likewise stated that he never instructed Michael or Debra Edison to create the documents. The work-product doctrine protects "documents and tangible things." *Id.*, at 906. If the documents at issue are not work-product, it necessarily follows that communications about the origin and production of those documents can not be work-product either. The only non-documentary or intangible matters covered by the work-product doctrine are: "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. Rule Civil Proc. 26(b)(3)(B); *see also Mark Torf*, 357 F.3d at 906. Mr. Thorman's communications with the Edisons about the origin and production of the purported loan documents do not constitute Mr. Thorman's mental impressions, conclusions, opinions, or legal theories concerning Michael Edison's case.

Further, even if the Court somehow found the two purported loan documents to constitute work-product, the privilege related to those documents was waived once they were voluntarily produced. *United States v. Salsedo*, 607 F.2d 318, 320-321 (9th Cir. 1979) (once counsel produces a document to an adversary or makes use of a document in litigation, any work-product privilege related to the document is waived). Accordingly, the defense can not logically or legally produce fraudulent documents via Mr. Thorman and then invoke the work-product doctrine to prevent the United States from determining the facts surrounding the origin and production of those documents by questioning Mr. Thorman on those topics.

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA          10

**D. The crime-fraud exception to the attorney/client privilege applies because the Edisons were engaged in a scheme to obstruct justice and used Mr. Thorman in furtherance of that scheme.**

Even if the Court finds that communications between Michael and/or Debra Edison and Mr. Thorman are covered by the attorney/client privilege, they are nevertheless discoverable pursuant to the crime-fraud exception because they were in furtherance of criminal activity, i.e. obstructing justice by creating false documents in support of Michael Edison's bogus defense to the wire fraud charges. *In re Grand Jury Proceedings*, 87 F.3d 377 (9th Cir. 1996).

The applicable rule is simple: "To invoke the crime-fraud exception . . . the government ' has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality . . . and that there is some relationship between the communications and the illegality." *Id.*, at 380. This Court must simply find "reasonable cause to believe that the attorney's services were utilized . . . in furtherance of the ongoing unlawful scheme . . . it is enough that the communication furthered, or was intended by the client to further, that illegality." *Id.*, at 381. The government is not required to prove that the communications in fact helped commit the crime, but only that there is reasonable cause to believe that they merely "relate" to the crime. *Id.*, at 382-383.

Applying this well-established rule to the facts of this case could not be more straightforward. Michael Edison stands accused of defrauding Jean Phleger of more than $2,000,000, and while in custody on those charges he instructed his wife, Debra Edison, to create false documents making it appear as if Jean Phleger loaned Michael Edison the money he defrauded her of. Shortly after Michael Edison issued those instructions to Debra Edison, she produced the exact documents he instructed her to create to Mr. Thorman, who was Michael Edison's attorney at the time. Mr. Thorman then appropriately produced the documents to the United States during the discovery process.[2] "The protection afforded by the attorney-client privilege does not extend to <u>any</u> communication 'in furtherance of intended, or present,

---

[2] Although irrelevant, there is no evidence of any complicity by Mr. Thorman in the Edisons scheme to obstruct justice. 87 F.3d at 381-382.

U.S. Opposition to Motions to Quash
CR 07-0074 WHA & CR 07-0479 WHA        11

1  continuing illegality.'" *Id.*, at 381 (emphasis added).

2  In *In re Grand Jury Proceedings*, the government was investigating a corporation for immigration and tax crimes and served grand jury subpoenas on two of the corporation's attorneys to answer questions about communications with corporate personnel regarding the employment status and compensation of a certain employee. *Id.*, at 379. The corporation moved to quash the subpoenas, invoking the attorney/client privilege and the attorney work-product doctrine. *Id.* Once the government met its burden of showing that the legal advice of the two attorneys was sought in furtherance of, and was sufficiently related to, ongoing immigration and tax crimes, the Ninth Circuit denied the motion to quash. *Id.* Likewise, the government has met its burden and the Edisons can not credibly rebut it. Accordingly, any communications between Mr. Thorman and the Edisons related to the two false loan documents are no longer protected by the attorney/client privilege.

Michael Edison's argument that the crime-fraud exception only applies in instances where the attorney is "retained" with the intent to commit a crime and that his situation is distinguishable because he allegedly retained Mr. Thorman prior to concocting his scheme to obstruct justice is both illogical and without legal support. First, taking that argument to its logical conclusion would mean that any defendant could use an attorney's services to commit crimes as long as s/he did so after the initial and innocent retention of the attorney. That argument is a fallacy and it requires no further comment other than to note that none of the cases cited by Edison support his argument. Second, as stated above, in *In re Grand Jury Proceedings*, the Ninth Circuit stated that "any" communication in furtherance of a crime is stripped of attorney/client privilege protection. The Ninth Circuit did not confine its ruling to communication made during the retention process. Third, the attorneys subpoenaed in *In re Grand Jury Proceedings* were corporate attorneys who were not retained by the corporation, which clearly supports the theory that communications made in furtherance of criminal activity, regardless of when they are made during the attorney/client relationship, are subject to the crime-fraud exception. The Ninth Circuit does not recognize Michael Edison's novel theory.

**IV.     Speedy Trial Act Status**

All time has been excluded as to both defendants by stipulation and order pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv). Thus, no days have elapsed on the speedy trial clock for either defendant and seventy (70) days will remain as of the date of disposition of the Motions.

**V.      Conclusion**

None of the communications between the Edisons and Mr. Thorman related to the origin and production of the two purported loan documents are covered by the attorney/client privilege or the work-product doctrine. Alternatively, even if the Court finds some or all of the communications were so covered, the crime-fraud exception applies and they are discoverable. Indeed, one would be hard-pressed to envision a situation more appropriate for the crime-fraud exception. The government respectfully requests that the Court deny the Motions.

DATED: December 28, 2007              Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


_____/s/_____
JEFFREY R. FINIGAN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an employee of the office of the United States Attorney, Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned certifies that he caused copies of

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO QUASH SUBPOENA and DECLARATION OF MANDY BRITTON IN SUPPORT OF UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO QUASH SUBPOENA**

in the cases of <u>U.S. v. MICHAEL EDISON and DEBRA EDISON</u>, No. CR-07-0074 WHA, No. CR-07-0479 WHA

to be served on the parties in this action, addressed as follows which are the last known addresses:

**Richard Mazer**
Law Offices Of Richard B. Mazer
99 Divisadero Street,
San Francisco, CA 94117

**Roger William Patton**
Patton Wolan Boxer
1814 Franklin Street
Suite 501
Oakland, CA 94612

_____ (By Personal Service), I caused such envelope to be delivered by hand to the person or offices of each addressee(s) above.

_____ (By Facsimile), I caused each such document to be sent by Facsimile to the person or offices of each addressee(s) above.

_____ (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California.

__X__ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address listed above.

I declare under penalty of perjury that the foregoing is true and correct.

1  December 28, 2007

_____/s/_____
WILSON WONG
United States Attorney's Office

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28