BARRY J. PORTMAN
Federal Public Defender
SHAWN HALBERT
ERIC MATTHEW HAIRSTON
Assistant Federal Public Defenders
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant
DEBRA EDISON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>DEBRA EDISON,<br><br>              Defendant. | No.   CR 07-0479 WHA<br><br>**DEBRA EDISON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO QUASH**<br><br>Court: Honorable William H. Alsup<br>Date:  January 15, 2008<br>Time:  2:00 p.m. |

## I.     INTRODUCTION

The Government has failed to rebut Debra Edison's assertion that her communications with Michael Thorman were private, confidential and protected from compelled disclosure by the attorney-client privilege. The Government is also unpersuasive in its argument that the attorney work-product doctrine does not extend to the mental thoughts, impressions, recollections and inquiries of Mr. Thorman with respect to the documents he produced to the government on June

1  21, 2007.  Finally, the Government has failed to carry its burden of establishing that the crime-
2  fraud exception applies to these otherwise confidential and privileged communications.  Having
3  failed to counter Mrs. Edison's assertion of privilege or establish the applicability of the crime-
4  fraud exception, the Government should not be permitted to compel testimony from Mr.
5  Thorman regarding his confidential and privileged communications with Debra Edison.

6  **II.     ARGUMENT**

7      **A.     The Government has not persuasively rebutted Debra Edison's assertion that her communications with Michael Thorman were protected by the attorney-client privilege**
8

9      In opposing Debra Edison's assertion of attorney-client privilege with respect to her
10  communications with Michael Thorman, the Government devotes significant attention to "Mr.
11  Thorman's perception of his relationship with Debra Edison" and argues that there is no "basis to
12  believe that [Mr. Thorman] was acting as her attorney."  Opposition, p. 7.  However, it is not
13  Mr. Thorman's perception that controls in making this determination, and he need not have been
14  acting as Mrs. Edison's attorney for the attorney-client privilege to apply.  Thus, his alleged
15  perception cannot legally rebut the defense's argument.

16      It is well settled that the primary consideration in determining whether an attorney-client
17  relationship existed is the intent of the client and whether she reasonably understood the
18  conference to be confidential. *United States v. Dennis*, 843 F.2d 652, 657 (2nd Cir. 1988).  *See*
19  *also*, *Kevlik v. Goldstein,* 724 F.2d 844, 849 (1st Cir. 1984) ("The guiding principle in
20  determining whether or nor there exists a privileged attorney-client relationship is the intent of
21  the client.")  The Government cannot rebut the fact that Mrs. Edison has introduced into the
22  record a sufficient basis to conclude that she communicated openly with Michael Thorman with
23  the belief that her statements were protected by the attorney-client privilege and the intent that
24  their communications would remain confidential.  *See,* First Declaration of Debra Edison in
25  Support of Motion to Quash, ¶ 4.
26

Further, the government's "evidence" of Mr. Thorman's perceptions, namely the declaration of Agent Britton containing hearsay, was improperly obtained and should not be considered by this Court. In what appears to be improper behavior, the government interviewed Michael Thorman about his legal relationship and conversations with Debra Edison *after* Debra Edison had filed a motion to quash the grand jury subpoena to Mr. Thorman and *after* Debra Edison had asserted an attorney-client relationship with Mr. Thorman. Given that Debra Edison had asserted the privilege and this Court has not yet ruled on the issue, it was inappropriate for the government to interview Mr. Thorman about his relationship and the contents of some of his conversations with Debra Edison in order to support the argument it makes in its opposition brief. Further, it was inappropriate for the government to submit presumptively attorney-client privileged information in support of its opposition prior to any determination by the Court as to the applicability and extent of the privilege. *See, United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996), holding in the context of the crime-fraud exception to the attorney-client privilege that "[t]he government cannot show the otherwise privileged material to the judge unless and until the judge has made this preliminary judgment [that the government has made a sufficient showing that the crime-fraud exception applies]." The defense requests that the Court make further inquiries to the government as to how it justifies this behavior, and that the Court consider imposing sanctions, including that Michael Thorman not be called as a grand jury witness.[1]

The government also devotes substantial energy to the "illogical" and "absurd" outcomes that can be imagined if the Court were to extend Mrs. Edison's personal expectation of

---

[1] The government bases its response to Debra Edison's assertion of privilege on its December 18, 2007 conversation with Michael Thorman. However, it offers no factual support or citation to the record to support its assertion that Michael Thorman did not represent any of Michael Edison's interests in the civil actions (Gov. Opp. at 7).

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

3

1  confidentiality to the spouses, heirs and casual acquaintances of criminal defendants *en masse*.[2]
2  It is true that an individual's expectation of confidentiality must be reasonable in order for the
3  attorney-client privilege to attach. *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. California 1995).
4  However, the Government seeks to impute the knowledge, education and professional skepticism
5  of an experienced prosecutor to the subjective expectations of a layperson unexposed to Socratic
6  discourse and unfamiliar with the pages of *Wigmore On Evidence. See, United States v.*
7  *Moscony*, 927 F.2d 742, 752 (3rd Cir. 1991), quoting with approval a finding by the District Court
8  for the Eastern District of Pennsylvania that two witnesses alleged to have waived their attorney-
9  client privilege in a criminal RICO action were "'unsophisticated lay persons who were not
10 advised by defense counsel or anyone else that the information they divulged [in written
11 affidavits provided to defense counsel] would not be confidential.'"[3]

12      Debra Edison, as a non-attorney with limited formal education, was reasonable in her
13 expectation that she could communicate confidentially with an attorney retained by her own
14 husband without fear that her statements would be subpoenaed, disclosed, and used against her.
15 One of the many reasons that her belief was reasonable was that she faced the exact same
16 financial consequences as did her husband. In its extensive quoting of the letter that Michael

---

[2] The government argues that this is illogical because it would also apply to children and the like. It is simply incorrect that anyone else shares the same financial relationship as do spouses – an expectation of an inheritance is not the equivalent of a current actual financial stake. Further, the government argues that it would be "absurd" to think that any spouse's conversations with his or her spouse's lawyer is privileged, but does not explain why. In fact, there is a legal spousal privilege that encompasses an enormous number of communications, and if a spouse is fully financially implicated in a lawsuit against his or her spouse *and* has an expectation of privacy, then it would not be unreasonable for such a privilege to exist in other cases, which are not before this Court in any event. Finally, the government has introduced no evidence whatsoever, such as a pre-nuptial agreement, rebutting the defense's position that Debra Edison had a direct financial interest in the outcome of the cases against her husband.

[3] The relevant witnesses were employees of defendant Moscony who had been informed and believed that they also were represented by Moscony's defense attorney for purposes of the grand jury investigation leading Moscony's indictment.

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

4

1  Edison sent to Debra Edison that allegedly forms the basis for the fraud, the government
2  overlooks the fact that Michael Edison refers to the attorneys and lawyers as "our attornies" (sic).
3  *See, e.g.,* attachement to Declaration of Mandy Britton, ME006988.
4        Finally, Debra Edison asks that the Court make further inquiry into the government's
5  reasons for summonsing Mr. Thorman before the grand jury as opposed to presenting Agent
6  Britton's testimony about her conversations with Mr. Thorman to the grand jury. The defense
7  asks that the Court inquire of the government whether any other fact witnesses (such as the
8  alleged victim in the case against Mr. Edison, Jean Phlegher) have been compelled to testify
9  before the grand jury, and if not, why Mr. Thorman is the only one. Undersigned counsel
10 believes that Michael Thorman will not dispute that at least at one point, he had an attorney-
11 client relationship with Debra Edison, and so at the very least, the government is compelling
12 Michael Thorman to violate his duty of loyalty to his one-time client. If other fact witnesses
13 have not been called before the grand jury and if information obtained from them has instead
14 been presented to the grand jury through the case agent, this raises an inference that the
15 government is improperly interfering with Debra Edison's attorney-client relationship.

16      **B.**    **The attorney work-product doctrine extends to Mr. Thorman's communications with Debra Edison**
17

18       As noted by the Government, Mrs. Edison does not assert that the documents produced
19 by Mr. Thorman to the Government constitute attorney work product. However, the fact that the
20 documents themselves are not work-product does nothing to strip the protection of the work-
21 product doctrine from Mr. Thorman's inquiry into the facts and circumstances surrounding their
22 production. The work-product privilege safeguards " 'written statements, private memoranda
23 and personal recollections prepared or formed by an adverse party's counsel in the course of his
24 legal duties.' " *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal 2006), quoting *Hickman v.
25 Taylor*, 329 U.S. 495, 510 (1947). The protections of the work-product doctrine extend not only
26 to documents and memoranda but also to mental impressions, personal beliefs, and countless

other tangible and intangible efforts and conclusions of counsel.  *See, Hickman*, at 511.

Thus, despite the Government's focus on the work-product doctrine's protection of "documents and tangible things," it is clear that the protections of the attorney work-product doctrine apply to Michael Thorman's inquiry into the origin of the documents produced by Mr. Thorman to the Government and to any statements made by Debra Edison in furtherance of that inquiry.  As articulated by the Supreme Court in *Hickman:*

> [A]s to oral statements made by witness [to counsel], whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case to justify production.  Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness.

329 U.S. 495, 512-513.

Further, Mr. Thorman's unilateral provision of the documents to the Government in no way effectuated a waiver by Mrs. Edison of the work-product privilege.  Generally speaking, "the attorney-client privilege is waived upon the voluntary disclosure of protected information by a client, or by an attorney at the behest of a client."  *U.S. v. Reyes*, 239 F.R.D. 591, at 598, citing *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Mrs. Edison has asserted that at no time did she explicitly or implicitly waive any privileges with respect to her communications with Mr. Thorman, and the Government has introduced no facts into the record to contradict her.

In fact, having grown impatient after intercepting Michael Edison's April 3, 2007 letter to his wife, the government purposefully and specifically elicited production by Michael Thorman of the referenced documents on or about June 8, 2007.  *See*, Exhibit A to the Declaration of Eric M. Hairston, attached hereto.  Nothing in the record indicates that either of the Edisons were aware that Mr. Thorman agreed to produce the documents in question, much less instructed that such production take place.  The grand jury subpoena seeking to compel testimony from Michael Thorman regarding his mental thoughts, impressions, recollections and other work product

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

1  should therefore be quashed.

2      **C.    The Government has not met its burden of establishing that the crime-fraud exception applies to confidential communications between Michael Thorman and Debra Edison**

4      Despite the Government's argument, neither the crime-fraud exception in general nor its application to the facts of this case can be described as "straightforward." The Ninth Circuit engaged in a recent and thorough discussion of the crime-fraud exception to the attorney-client privilege in *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078 (9th Cir. 2007). There, the Court articulated a two-part test for a party seeking to vitiate the attorney-client privilege under the crime-fraud exception. First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, the party must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *Napster*, at 1090, quoting *In re Grand Jury Proceedings*, 87 F.3d 377, at 381 (9th Cir. 1996). In order to satisfy this test, the Government must submit "evidence that if believed by the jury would establish the elements of an ongoing violation." *United States v. Chen*, 99 F.3d 1495, 1503. Mere allegations or suspicion by the Government are insufficient to establish the applicability of the crime-fraud exception. Rather, the burden of proof that the Government must meet is one of "reasonable cause." Reasonable cause, as defined by the Ninth Circuit, is "more than suspicion but less than a preponderance of evidence." *Id*.

20      Here, the Government has presented no facts establishing reasonable cause to believe that any confidential communications between Debra Edison and Michael Thorman were made in furtherance of intended or continuing obstruction of justice.[4] The statute under which Mrs. Edison was charged imposes penalties for knowing alteration, destruction, mutilation or falsification (among other things) of any record, document or tangible object "*with the intent* to

---

[4] Or past obstruction of justice, for that matter.

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

7

1 impede, obstruct, or influence the investigation or proper administration of any matter within the
2 jurisdiction of any department or agency of the United States..." 18 U.S.C. 1519 (emphasis
3 added). The Government has not set forth any facts giving rise to reasonable cause to conclude
4 that Mrs. Edison took any action with respect to the documents in question with the intent to
5 obstruct the Government's investigation of her husband.

6       As noted above, it appears that Mr. Thorman provided the documents in question in
7 response to a specific request from the Government, who since April 3, 2007 had anticipated an
8 act of obstruction that never materialized. The government's brief omits the fact that the
9 government contacted Mr. Thorman and asked him to give it any documents that matched the
10 description of the fraudulent documents it hoped the defendants had created. It seems both
11 illogical and contrary to the interests of justice that the Government would now seek to base the
12 crime-fraud exception, and potentially a superceding indictment, on Mr. Thorman's
13 accommodation of their own request.

14       Further, the Government has failed to demonstrate how any communications between
15 Mrs. Edison and Mr. Thorman regarding the documents were in furtherance of *intended or*
16 *continuing* obstruction. It is well established that attorney-client communications concerning
17 past or completed crimes do not come within the crime-fraud exception. *In re Grand Jury*
18 *Subpoena 92-1*, 31 F.3d 826, 831 (9th Cir. 1994). The Government's opposition does not clearly
19 articulate a point in time when Mrs. Edison's alleged crime of obstruction of justice was
20 completed. If it is the Government's position that the obstruction was effectuated by Mr.
21 Thorman's June 21, 2007 production of documents, counsel for Mrs. Edison submits that the
22 crime-fraud exception is inapplicable due to the Government's failure to demonstrate any intent,
23 or even knowledge, on the part of Mrs. Edison in connection with that production. If the
24 Government alleges that the crime of obstruction was completed at some point prior to the June
25 21, 2007 production, then any subsequent conversation between Mr. Thorman and Mrs. Edison
26

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

8

1  regarding the origin and nature of the documents in question necessarily falls outside the scope of
2  the crime-fraud exception.  The Government has failed to demonstrate that the crime-fraud
3  exception applies to otherwise privileged and confidential communications between Debra
4  Edison and Michael Thorman, and the subpoena calling for testimony regarding such
5  communications should therefore be quashed.

6  **III.    CONCLUSION**

7  The Government has failed to persuasively rebut Debra Edison's assertion that her
8  confidential communications with Michael Thorman were protected by the attorney-client
9  privilege and attorney work-product doctrine.  Further, the Government has failed to establish
10 that the crime-fraud exception applies to these otherwise privileged communications.  Having
11 failed to counter Mrs. Edison's assertion of privilege or carry its burden regarding the crime-
12 fraud exception, the Government should not be permitted to compel testimony from Mr.
13 Thorman regarding his confidential communications with Mrs. Edison.  The subpoena calling for
14 Michael Thorman to testify before the grand jury should therefore be quashed.

15 ///
16 ///
17
18 Dated: January 8, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/

SHAWN HALBERT
ERIC MATTHEW HAIRSTON
Assistant Federal Public Defenders

United States v. Debra Edison, No. CR 07-0479 WHA
Reply to Government's Opposition to Motion to Quash

9