1   BARRY J. PORTMAN
    Federal Public Defender
2   SHAWN HALBERT
    ERIC MATTHEW HAIRSTON
3   Assistant Federal Public Defenders
    19th Floor Federal Building – Box 36106
4   450 Golden Gate Avenue
    San Francisco, CA 94102
5   Telephone: (415) 436-7700

6   Counsel for Defendant
    DEBRA EDISON
7

8

9                       IN THE UNITED STATES DISTRICT COURT

10                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12                                          )
                                            )   No. CR 07-0479 WHA
13  UNITED STATES OF AMERICA,               )
                                            )   DEBRA EDISON'S NOTICE OF MOTION
14          Plaintiff,                      )   AND MOTION TO QUASH GRAND JURY
                                            )   SUBPOENA
15          v.                              )
                                            )   Court: Honorable William H. Alsup
16  DEBRA EDISON,                           )   Date:   January 15, 2008
                                            )   Time:   2:00 p.m.
17          Defendant                       )
    _____)

18

19          Debra Edison, through her counsel, hereby respectfully moves this Court for an order to

20  quash the subpeona seeking to compel grand jury testimony from attorney Michael Thorman on

21  December 18, 2007.  Mrs. Edison brings this motion to pursuant to Rule 17(c) of the Federal

22  Rules of Criminal Procedure to quash any testimony constituting any confidential attorney-client

23  communications between Mr. Thorman and Mrs. Edison, Mr. Thorman's attorney work product

24  on behalf of Mrs. Edison, and any other testimony that would cause Mr. Thorman to violate his

25  duty of loyalty to Mrs. Edison.

26

MOTION TO QUASH                              1

## I.    STATEMENT OF FACTS

Debra Edison was charged on July 24, 2007 in a one count Information with obstruction of justice in violation of 18 U.S.C. 1519. The Information alleges that between April 2007 and June 2007, Mrs. Edison knowingly altered and falsified documents with the intent to impede, obstruct, and influence the criminal proceedings against her husband, Michael Edison, in the matter of *United States v. Michael Edison*, CR 07-0074. The charges against Mr. Edison generally relate to alleged fraudulent conduct in connection with his management of certain financial matters for a former client.

As this Court is aware, attorney Michael Thorman was counsel of record for Michael Edison in the matter of *United States v. Edison* from on or about May 24, 2007 until Mr. Thorman moved to withdraw from representation on or about December 6, 2007. Counsel to Mrs. Edison recently learned that Mr. Thorman has received a federal grand jury subpoena that the defense has reason to believe may reveal confidential attorney-client communications between Mr. Thorman and Mrs. Edison, Mr. Thorman's attorney work product on behalf of Mrs. Edison, and further testimony that would cause Mr. Thorman to violate his duty of loyalty to Mrs. Edison.

## II.    APPLICABLE LAW REGARDING REVIEW

Federal Rule of Criminal Procedure 17(c) provides that the court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Generally, a party to whom a subpoena is directed may not appeal the denial of a motion to quash, and instead must either comply with the subpoena or contest the validity of the subpoena subsequent to citation for contempt. *In re Subpoena to Testify Before the Grand Jury, Thomas J. Alexiou v. United States*,

1    39 F.3d 973, 975 (9th Cir. 1994). However, there is a well-recognized exception to this rule

2    allowing for an immediate appeal of denial of a motion to quash when the subpoena is directed at

3    a third-party witness, on the grounds that a third-party "would not normally be expected to risk a

4    contempt citation but will instead surrender the sought-after information, thereby precluding

5    effective appellate review at a later stage." *Id.*, quoting *In re Grand Jury Subpoenas (Marger)*,

6    695 F.2d 363, 365 (9th Cir. 1982). *See also*, *In re Grand Jury Subpoena Served Upon Niren*,

7    784 F.2d 939, 941 (9th Cir. 1986), *In re Grand Jury Subpoena Served On Meserve, Mumper &*

8    *Hughes*, 62 F.3d 1222, 1223 (9th Cir. 1995).

9

10       The above-stated exception has been applied to cases in which a subpoena is directed to a

11   third-party attorney. *Niren*,784 F.2d 939, at 941, citing *In re Grand Jury Subpoenas Duces*

12   *Tecum, (Lahodny)*, 695 F.2d 363, 365 (9th Cir. 1982); *In re Grand Jury Proceedings (Fine)*, 641

13   F.2d 199, 203 (5th Cir. 1981); *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 800-

14   801 (3d Cir. 1979); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671, 674 (7th Cir. 1977). The

15   rationale for application of the exception in such cases is that only immediate review ensures

16   effective preservation of the attorney-client privilege. *See*, *In re Subpoena to Testify Before the*

17   *Grand Jury (Alexiou)*, 39 F. 3rd 973, 975 "if his client's right, if any, to secrecy [of the

18   communications in question] is to be protected at all, we must review the district court decision

19   now." Where the relevant scope of the attorney-client privilege is clear and the decision that the

20   district court must make is essentially factual, the district court's rulings as to the privilege are

21   reviewed for clear error. However, the district court's rulings regarding the scope of attorney-

22   client privilege involve mixed questions of law and fact and are reviewed *de novo*. *In re Grand*

23   *Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 858 (9th Cir. 1991). *See also*, *Alexiou*,

24   39 F.3d 973, 976.

25

26

MOTION TO QUASH                                3

III.    **ARGUMENT**

   A.    **The Attorney-Client Privilege Prohibits Compelled Disclosure of Confidential Communications With Counsel.**

It is widely accepted that preservation of the attorney-client privilege is essential to the just and orderly operation of our legal system. As articulated by the Ninth Circuit in *United States v. Bauer*:

> "[t]he defining principle behind this privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." 132 F.3d 504, 510 (9th Cir. 1997).

The attorney-client privilege applies when (1) legal advice is sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) are made in confidence (5) by the client. *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D.Cal. 1995), citing *Admiral Ins. v.* U.S. District Court, 881 F.2d 1486, 1492 (9th Cir. 1989). The key consideration in determining whether an attorney-client relationship existed is the intent of the client and whether she reasonably understood the conference to be confidential. *United States v. Dennis*, 843 F.2d 652, 657 (2nd Cir. 1988). *See also*, *Davis*, at 694 "whether or not a given communication is 'confidential' within the meaning of the privilege is determined from the perspective of the client."

   B.    **Mrs. Edison Had a Reasonable Expectation of Confidentiality In Her Communications With Michael Thorman Regarding the Legal Actions in Which Her Husband Is Named.**

While the case before the court is a criminal matter, the same underlying set of facts also

MOTION TO QUASH                                        4

gave rise to at least two civil lawsuits in which Michael Edison is a named defendant. *See,* Exhibit A to the Declaration of Eric M. Hairston, attached hereto. Prior to his withdrawal as counsel, Mr. Thorman and Mrs. Edison conferred privately on a regular basis regarding both the civil and criminal matters in which her husband was named. During the time in which such conversations took place, Mrs. Edison understood that an adverse finding against her husband in these actions would also subject her to direct personal and financial consequences, and as a result it was her expectation that Mr. Thorman provided legal counsel for the benefit of the marital community, rather than simply for Mr. Edison in his individual capacity. *See,* First Declaration of Debra Edison, filed herewith, ¶ 3. Given this belief, Mrs. Edison acted with the understanding that all communications between her and Mr. Thorman regarding the actions in which her husband was named were confidential and protected from disclosure by the attorney-client privilege. First Edison Decl., ¶ 4

The extent to which Mrs. Edison's expectations regarding the attorney-client privilege were reasonable is informed by the extent to which her potential financial exposure in the civil actions is on par with that of her husband. California law provides that the entire community property estate is liable for repayment of debts incurred by either spouse, before or during marriage, regardless of which spouse has management and control of the property and regardless of whether one or both spouses are parties to a judgment for the debt. *McIntyre v. United States,* 222 F.3d 655, 658 (9th Cir. 2000) (quoting California Family Code Section 910). Under California Family Code Section 1000, this collective liability extends to intentional torts from which the marital community received a financial benefit, even where one spouse was completely unaware of the tortious activity. *In re Marriage of Bell v. Bell,* 49 Cal. App. 4th 300, 310 (1996). Given that Mrs. Edison is confronted with equal liability under the law for all debts,

1  judgments and settlements arising from the actions in which her husband is named, it is

2  reasonable that she would expect the law to afford her an equal degree of confidentiality when

3  conferring in private with an attorney retained to defend against those actions.

4
5      Because Mrs. Edison engaged in frequent legal communications with Mr. Thorman under

6  the reasonable expectation that such communications were confidential and protected from

7  compelled disclosure by the attorney-client privilege, the subpoena calling for Mr. Thorman to

8  disclose these attorney-client privileged communications, Mr. Thorman's work product on behalf

9  of Mrs. Edison, and any other testimony that might cause Mr. Thorman to violate his duty of

10  loyalty to Mrs. Edison should be quashed.

11
12      **C.    Mrs. Edison's conversations with Michael Thorman regarding her
          independent legal exposure are protected by the attorney-client privilege.**

13

14      In addition to her conversations with Mr. Thorman regarding the civil and criminal actions

15  in which her husband is named, Mrs. Edison on at least one occasion sought Mr. Thorman's

16  counsel regarding her own potential legal exposure. These communications were unquestionably

17  confidential and legal in nature. *See*, Second Declaration of Debra Edison (filed under seal and *ex*

18  *parte*), ¶¶ 2-4.  It is well established that initial statements by an individual seeking advice from

19  counsel are privileged, regardless of whether the attorney subsequently accepts or refuses the

20  engagement. *Dennis*, 843 F.2d 652 at 656.  Given the clear attorney-client privileged nature of

21  these communications between Mrs. Edison and Mr. Thorman, the subpoena compelling Mr.

22  Thorman to provide testimony regarding such conversations and any subsequent work product on

23  behalf of Mrs. Edison should be quashed.

24

25  ///

26

1

## IV.    CONCLUSION

2

3      For the foregoing reasons, Mrs. Debra Edison respectfully requests that this court enter an

4  order to quash the subpoena seeking testimony from Michael Thorman that would violate the

5  attorney-client privilege or disclose any attorney work product performed on Mrs. Edison's

6  behalf.

7

8

9

10  Dated: December 14, 2007

11

12                                      Respectfully submitted,

13

14                                      BARRY J. PORTMAN

15                                      Federal Public Defender

16

17

18                                      SHAWN HALBERT
                                        ERIC MATTHEW HAIRSTON
19                                      Assistant Federal Public Defenders

20

21

22

23

24

25

26