1  BARRY J. PORTMAN
   Federal Public Defender
2  SHAWN HALBERT
   ERIC MATTHEW HAIRSTON
3  Assistant Federal Public Defenders
   19th Floor Federal Building – Box 36106
4  450 Golden Gate Avenue
   San Francisco, CA 94102
5  Telephone:  (415) 436-7700

6  Counsel for Defendant
   DEBRA EDISON
7

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12                                    )
                                      )   No. CR 07-0479 WHA
13  UNITED STATES OF AMERICA,         )
                                      )   DECLARATION OF ERIC M. HAIRSTON
14        Plaintiff,                  )   IN SUPPORT OF DEBRA EDISON'S
                                      )   MOTION TO QUASH GRAND JURY
15        v.                          )   SUBPOENA
                                      )
16  DEBRA EDISON,                     )   Court: Honorable William H. Alsup
                                      )   Date: January 15, 2008
17        Defendant                   )   Time: 2:00 p.m.
   _____
18

19

20

21

22

23

24

25

26

   HAIRSTON DECLARATION IN SUPPORT OF
   MOTION TO QUASH                    1

1    I, Eric M. Hairston, declare as follows:

2   1.     I am an Assistant Federal Public Defender for the Northern District of California.  I make

3         this declaration in support of Debra Edison's Motion to Quash the Grand Jury Subpoena

4         Served on Michael Thorman.  I have knowledge of the facts set forth below and, if called

5         as a witness in this matter, could and would competently testify to them.

6   2.     Attached hereto as Exhibit A is a true and correct copy of First National Mortgage

7         Sources, LLC and George W. Hannah II's Third-Party Complaint for Indemnity by

8         Michael Edison, filed in Federal District Court for the Northern District of California on

9         March 30, 2007 in the civil matter *Jean Phleger v. Countrywide Home Loans et. al.*, Case

10        No. 07-01686 SBA.

11   3.     Attached as Exhibit A to the above-referenced Complaint, and therefore also incorporated

12         into Exhibit A to this declaration, is a true and correct copy of the Complaint filed in San

13         Francisco Superior Court on February 14, 2006 in the civil matter *Jean Phleger v.*

14         *Michael Edison; Private Wealth Management Group; and Does 1 through 10, inclusive,*

15         Case No. 06449433.

16         I declare under penalty of perjury that the foregoing is true and correct.  Signed this 14th

17 day of December, 2007 in San Francisco, California.

18

19 Dated: December 14, 2007

20                        Respectfully submitted,

21                        BARRY J. PORTMAN
                           Federal Public Defender

22

23

24                        ERIC MATTHEW HAIRSTON
                       Assistant Federal Public Defender

25

26

# EXHIBIT A

1    CEDRIC C. CHAO (State Bar No. 76045)
     Email: CChao@mofo.com
2    DIANE E. PRITCHARD (State Bar No. 96999)
     Email: DPritchard@mofo.com
3    KEVIN A. CALIA (State Bar No. 227406)
     Email: KCalia@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California  94105-2482
     Telephone:  (415) 268-7000
6    Facsimile:   (415) 268-7522

7    Attorneys for Defendants and Third-Party Plaintiffs
     FIRST NATIONAL MORTGAGE SOURCES, LLC
8    and GEORGE W. HANNAH II

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14  JEAN PHLEGER, an individual, | Case No.  CV 07-01686 SBA |
| 15                  Plaintiff, | |
| 16         vs. | **FIRST NATIONAL MORTGAGE SOURCES, LLC'S AND GEORGE W. HANNAH II'S THIRD-PARTY COMPLAINT FOR INDEMNITY** |
| 17  COUNTRYWIDE HOME LOANS, INC. (dba AMERICA'S WHOLESALE LENDER); | |
| 18  COUNTRYWIDE BANK, N.A.; RECONTRUST COMPANY, N.A.; FIRST | |
| 19  NATIONAL MORTGAGE SOURCES, LLC; GEORGE W. HANNAH II, an individual; and | |
| 20  DOES 1 through 10, inclusive, | |
| 21                  Defendants. | |
| 22 | |
| 23  FIRST NATIONAL MORTGAGE SOURCES, LLC and GEORGE W. HANNAH II, | |
| 24               Third-Party Plaintiffs, | |
| 25         vs. | |
| 26  MICHAEL EDISON, | |
| 27               Third-Party Defendant. | |

28

FIRST NATIONAL'S AND GEORGE HANNAH'S THIRD-PARTY COMPLAINT
CASE NO. CV 07-01686 SBA
sf-2292898

1        Third-party plaintiffs First National Mortgage Sources, LLC ("First National") and

2  George W. Hannah II ("Hannah"), for their third-party complaint herein, allege:

3                **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4       1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the

5  claims herein are so related to the claims in plaintiff's complaint in this action that they form part of

6  the same case or controversy.

7       2.   Venue in this district is proper and assignment to the San Francisco Division of this

8  Court is proper, pursuant to 28 U.S.C. § 1446(a), because this is part of an action that was removed

9  to this Court from the San Francisco Superior Court.

10                         **THE PARTIES**

11       3.   First National is, and at all times mentioned herein has been, a limited liability company

12  organized and existing under the laws of the State of Kansas, with its principal place of business in

13  Overland Park, Kansas.  First National is engaged in the mortgage brokerage business.

14       4.   Hannah is, and at all times mentioned herein has been, a resident of the State of Nevada

15  and a sales agent employed by First National.

16       5.   First National is informed and believes that third-party defendant Michael Edison

17  ("Edison") may be a resident of the United States Virgin Islands, and is currently in the custody of

18  the United States Marshal within this judicial district.  Edison formerly acted as the wealth manager

19  of plaintiff Jean Phleger ("Phleger").

20                    **NATURE OF THE ACTION**

21       6.   This action arises out of Edison's alleged stealing of Phleger's money, and Phleger's

22  suit against First National and Hannah, among others, to attempt to recover those losses.

23       7.   In February 2006, Phleger sued Edison in the San Francisco Superior Court, alleging

24  that she had retained Edison as her wealth manager, that Edison had obtained mortgage loans in her

25  name, that the proceeds of the loans had been wired to Phleger's and Edison's joint bank account,

26  and that Edison had subsequently converted a portion of those monies in their joint account and fled

27  to the Virgin Islands.  A true copy of Phleger's complaint against Edison, in the case of *Jean*

28  *Phleger v. Michael Edison, et al.*, is attached hereto as Exhibit A.

FIRST NATIONAL'S AND GEORGE HANNAH'S THIRD-PARTY COMPLAINT          1
CASE NO. CV 07-01686 SBA
sf-2292898

1    8.    Six months later, in August 2006, Phleger filed this suit against First National and one

2  of its sales agents, Hannah, among other defendants, in the San Francisco Superior Court, alleging

3  that they were in some manner responsible for Edison's alleged looting of Phleger's and Edison's

4  joint account. Phleger subsequently amended her complaint two times. A true copy of plaintiff's

5  Second Amended Complaint against First National, Hannah, and other defendants (including

6  Countrywide Home Loans, which provided mortgage loans to Phleger) is attached hereto as

7  Exhibit B.

8    9.    If Phleger sustained damages as alleged in her complaints against Edison and against

9  First National and Hannah, those damages were caused entirely by Edison. First National and

10  Hannah in fact had no involvement in Edison's alleged stealing of Phleger's money.

11    10.    Hannah first met Edison in June or July 2005. Edison told Hannah that Edison had a

12  number of wealthy clients who desired mortgage loans. Edison asked Hannah to act as the mortgage

13  broker for one of Edison's clients, Phleger, who wished to obtain a mortgage loan in the amount of

14  approximately $4 million.

15    11.    During the summer of 2005, Hannah prepared Phleger's loan applications. Edison and

16  his employees provided information and documents to Hannah for use in preparation of Phleger's

17  loan applications, and obtained Phleger's signature on the completed loan applications. Phleger met

18  with Hannah and confirmed to him that she wished to obtain the loans.

19    12.    First National and Hannah are informed and believe that Phleger's mortgage loans —

20  which she obtained from Countrywide Home Loans — closed and were funded in September 2005.

21  First National and Hannah are informed and believe that a portion of Phleger's loan proceeds were

22  used to pay off her existing loans and/or lines of credit. First National and Hannah are further

23  informed and believe that the remaining loan proceeds, in the amount of approximately $2.3 million,

24  were wired to a joint account held by Phleger and Edison at Wells Fargo Bank. First National and

25  Hannah are informed and believe that Phleger signed the account documents opening that joint

26  account, in May 2005.

27    13.    First National and Hannah had no further involvement with Phleger's loans until the

28  summer of 2006, when Hannah received a telephone call from the risk department at Countrywide

1    Home Loans, asking him questions about the Phleger loans.  Hannah later contacted Edison to

2    inquire whether there had been any problem with the Phleger loans.  Edison told Hannah that he

3    could not imagine Phleger not making payments on the loans, but that Edison was no longer

4    handling Phleger's financial matters.

5            14.    In August 2006, Phleger filed this suit against First National, Hannah, Countrywide

6    Home Loans, and others, in the San Francisco Superior Court.  In her complaint, Phleger sought to

7    hold First National and Hannah responsible for Edison's alleged stealing of money from Phleger's

8    and Edison's joint account.  Phleger purported to charge First National and Hannah with conspiracy

9    to defraud, "elder abuse," breach of fiduciary duty, unfair competition, and unjust enrichment, based

10   on fabricated allegations that First National and Hannah had participated in Edison's purported

11   scheme to steal Phleger's money.

12           15.    After First National and Hannah demurred to Phleger's complaint, Phleger filed a First

13   Amended Complaint, adding the untrue allegations that First National and Hannah purportedly

14   "knew" of Edison's scheme to steal Phleger's money and intentionally acted in furtherance of such

15   scheme.  Phleger's purpose in adding these allegations was to defeat First National's and Hannah's

16   demurrer.  Phleger's tactic worked, as the Superior Court overruled the demurrer on the express

17   ground that Phleger had added the allegations of First National's and Hannah's purported knowledge

18   of Edison's scheme.

19           16.    As the result of the acts of Edison alleged in this Third-Party Complaint and in

20   Phleger's complaint against Edison and Phleger's complaints against First National and Hannah in

21   this action, First National and Hannah have been forced to incur attorneys' fees and costs in

22   defending against Phleger's claims in this proceeding.

**CLAIM FOR RELIEF**

**(Indemnity)**

25           17.    First National and Hannah reallege and incorporate herein by reference each and every

26   allegation contained in paragraphs 1 through and including 16 of this Third-Party Complaint.

FIRST NATIONAL'S AND GEORGE HANNAH'S THIRD-PARTY COMPLAINT
CASE NO. CV 07-01686 SBA
sf-2292898

3

18.    An actual controversy has arisen and now exists between First National and Hannah, on the one hand, and Edison, on the other hand, regarding their rights and legal relations with respect to each other, in that:

(a)    First National and Hannah claim and contend that, under the circumstances alleged herein, if Phleger were to prevail on her complaint against First National and/or Hannah, any loss or damages that First National and/or Hannah may as a consequence suffer would be based solely upon Edison's stealing of Phleger's money and other wrongful acts, and not upon any wrongdoing by First National and/or Hannah;

(b)    First National and Hannah claim and contend that Edison is liable to them, under principles of equitable indemnity, for any loss or damages that First National and/or Hannah may suffer as a consequence of Edison's wrongful conduct with respect to Phleger; and

(c)    First National and Hannah are informed and believe, and on that basis allege, that Edison claims and contends to the contrary.

19.    First National and Hannah desire a judicial determination of the parties' respective rights and legal relations, pursuant to 28 U.S.C. § 2201, regarding the above issues.  Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties with respect to each other and concerning the above conflicting claims.  A declaration by the Court determining which of the conflicting contentions of the parties is correct will terminate the uncertainty and controversy surrounding the parties' rights and obligations, and thus promote the interests of justice.

20.    Such a declaration is necessary and appropriate at this time in that First National's and Hannah's claim against Edison arises out of the same transactions and series of events that have given rise to Phleger's claims against First National and Hannah, and a judicial determination of all said claims in one proceeding will avoid the multiplicity of actions that would result if First National and Hannah were required to defend against the claims of Phleger and then, if Phleger prevails, seek recovery from Edison for First National's and/or Hannah's loss or damages resulting from Edison's wrongful conduct against Phleger.

21.   First National and Hannah are entitled to indemnity by Edison for any loss or damages they may suffer as a result of Phleger's claims against them in this action.

22.   In addition, First National and Hannah are entitled to recover from Edison their attorneys' fees and costs incurred in being forced to defend against Phleger's claims against them in this proceeding.

**PRAYER**

WHEREFORE, First National and Hannah pray for judgment as follows:

(a)   For a judicial determination of First National's, Hannah's, and Edison's rights and legal relations with respect to each other, and a declaration that Edison is liable to First National and Hannah for any loss or damages that First National and/or Hannah may suffer as a consequence of Phleger's claims against them in this proceeding;

(b)   For damages against Edison to indemnify them for any loss or damages they may incur as a result of Phleger's claims against them in this proceeding;

(c)   For damages against Edison in the amount of the attorneys' fees and costs First National and Hannah have incurred and will incur in defending against Phleger's claims in this proceeding;

(d)   For their costs and expenses of suit incurred on this Third-Party Complaint, including reasonable attorneys' fees; and

(e)   For such other, further and different relief as this Court may deem just and reasonable.

Dated:  March 30, 2007

MORRISON & FOERSTER LLP
CEDRIC C. CHAO
DIANE E. PRITCHARD
KEVIN A. CALIA


By _____/s/ Cedric C. Chao_____
                    Cedric C. Chao
Attorneys for Defendants and Third-Party Plaintiffs
FIRST NATIONAL MORTGAGE SOURCES, LLC
and GEORGE W. HANNAH II

# EXHIBIT A

**F I L E D**
San Francisco County Superior Court

FEB 1 4 2006

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

1   ALLEN MATKINS LECK GAMBLE & MALLORY LLP
    ROBERT R. MOORE (BAR NO. 113818)
2   MICHAEL J. BETZ (BAR NO. 196228)
    Three Embarcadero Center, 12th Floor
3   San Francisco, CA 94111-4074
    Telephone: (415) 837-1515
4   Facsimile: (415) 837-1516

CASE MANAGEMENT CONFERENCE SET

5   Attorneys for Plaintiff
    JEAN PHLEGER, an individual

JUL 1 4 2006 — 9 ⁰⁰ AM

6

7                                    DEPARTMENT 212    **SUMMONS ISSUED**

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN FRANCISCO

10

11  JEAN PHLEGER, an individual,          Case No.  CGC 0 6 4 4 9 4 3 3

12              Plaintiff,                 **COMPLAINT FOR CONVERSION,**
                                           **EMBEZZLEMENT, THEFT, INTENTIONAL**
13          vs.                            **MISREPRESENTATION, NEGLIGENT**
                                           **MISREPRESENTATION, ELDER ABUSE,**
14  MICHAEL EDISON; PRIVATE WEALTH         **VIOLATION OF BUSINESS & PROFESSIONS**
    MANAGEMENT GROUP; and DOES 1           **CODE SECTION 17200, DECLARATORY**
15  through 10, inclusive,                 **RELIEF, TEMPORARY RESTRAINING**
                                           **ORDER/PRELIMINARY INJUNCTION/**
16              Defendants.                **PERMANENT INJUNCTION**

17

18

19

20

21

22

23

24

25

26

27

28

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

669634.02/SF

_____ COMPLAINT _____

1    Plaintiff Jean Phleger ("Phleger"), a 67-year-old widow, brings this complaint
2  against Edison and Private Wealth Management Group ("PWMG") for conversion,
3  embezzlement, theft, intentional misrepresentation, negligent misrepresentation, elder
4  abuse, violation of Business & Professions Code section 17200, declaratory relief,
5  temporary restraining order/preliminary injunction/permanent injunction.

6                                    **PARTIES**

7      1.    Plaintiff Jean Phleger is an individual primarily residing at 2728 Green
8  Street, San Francisco, California (the "Green Street Residence").

9      2.    Defendant Michael Edison ("Edison") is an individual, and is the Chairman
10  of Defendant Private Wealth Management Group, who at all times relevant herein
11  conducted business in San Francisco County, California.

12     3.    Defendant Private Wealth Management Group ("PWMG") holds itself out as
13  a limited liability company with offices in Scottsdale, Arizona and Henderson, Nevada,
14  which at all times relevant herein conducted business with Phleger in San Francisco
15  County.

16     4.    Phleger is ignorant of the true names and capacities of Defendants sued
17  herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such
18  fictitious names.   Phleger will amend this Complaint to allege their true names and
19  capacities when ascertained. Phleger is informed and believes and thereon allege that each
20  of the fictitiously named Defendants is responsible in some manner for the occurrences
21  herein alleged, and that Phleger's damages as herein alleged were proximately caused by
22  such Defendants.

23     5.    Phleger is informed and believes, and upon such basis alleges, that at all
24  times herein mentioned, each of the Defendants herein was an agent, servant, employee
25  and/or joint venturer of each of the remaining Defendants, and was at all times acting
26  within the consent and scope of such agency, service, employment and/or joint venture.
27  Further, the acts of each Defendant, as an agent or employee for each of the remaining
28  Defendants, were ratified by said remaining Defendants.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668634.02/SF                                   COMPLAINT

1          <u>JURISDICTION AND VENUE</u>

2          6.      Defendants' intentional acts evidence the maintenance of certain minimum

3  contacts with the State of California in that these intentional acts are knowingly and

4  expressly directed at the Phleger by the Defendants and, as a result of those express and

5  intentional acts, the State of California, including but not limited to the County of San

6  Francisco, becomes nexus of Defendants' actions and the resulting harms suffered by

7  Phleger.   Phleger is informed and believes and thereon alleges that at all times, the

8  Defendant knew or should have knew the harms caused by the Defendants' actions would

9  be suffered by Phleger in the State of California, including but not limited to the County of

10  San Francisco.   Phleger is further informed and believes and thereon alleges that the

11  Defendants engage in a substantial amount of commerce within the State of California,

12  County of San Francisco.

13          7.      Venue is proper in this Court as governed by California Code of Civil

14  Procedure section 395 that provides when none of the defendants reside in the state, the

15  action may be tried in the Superior Court in any county that the plaintiff may designate in

16  his or her complaint.

17          8.      Venue is further proper in this Court as governed by California Code of Civil

18  Procedure section 395.5 that provides for a corporation to be sued in the county where

19  liability arises.

20          <u>BACKGROUND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

21          9.      Phleger, a 67-year old widow, owns a home on Green Street in San

22  Francisco.

23          10.     As of May 2005, there was an existing line of credit with Wells Fargo on the

24  Green Street Property, in an amount of approximately $1,000,000.

25          11.     In or about May 2005, Defendant Michael Edison ("Edison") met with

26  Phleger after a referral through a family member.   Edison explained to Phleger that he

27  could pay off the existing Wells Fargo line of credit and obtain a new and increased line of

28  credit on which Phleger could live.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668534.02/SF

-2-
COMPLAINT

1    12.    Edison said that he would do the line of credit work "pro bono" as a courtesy

2  to the family.

3    13.    Phleger then signed documents, which she believed allowed Edison a limited

4  right to pay off the existing Wells Fargo line of credit and obtain a new and increased line

5  of credit on which Phleger could live.

6    14.    Unbeknownst to Phleger, Edison failed to simply pay off the existing line of

7  credit but, rather, obtained a new loan from Wells Fargo, the proceeds of which he

8  deposited into a joint checking account in a San Mateo County branch office of Wells

9  Fargo Bank.   As of August 31, 2005, the balance of that Wells Fargo account was

10  $409,299.74.  Phleger did not receive the joint account bank statements; instead, they were

11  sent to Edison.

12    15.    In August, 2005, Edison called and stated to Phleger that he was unable to

13  pay-off the existing Wells Fargo line of credit and obtain a larger line of credit.  Instead, he

14  stated he would obtain another line of credit from Countywide Mortgage Company from

15  which he would pay-off the Wells Fargo line of credit.   To consummate this transaction,

16  Edison stated he needed Phleger to sign new documents.  He then flew to New York where

17  Phleger was vacationing so she could sign the Countywide documents.  When Edison put

18  the documents in front of Phleger, she was medicated for back pain and did not have

19  counsel review the documents..

20    16.    In or about September 2005, Edison telephoned Phleger, and informed her

21  that he successfully obtained a larger equity line of credit with Countrywide Mortgage

22  Company.  Edison told Phleger that he and PWMG would pay her bills and draw upon the

23  Countrywide line of credit as she directed him to do..

24    17.    In or about December, 2005, Phleger learned that Edison was not paying

25  bills when creditors began contacting Phleger and demanding that various outstanding bills

26  be brought current.   At one point, the electricity company turned off Phleger's power

27  because of non-payment.  Because Edison was purportedly paying Phleger's bills with the

28  line of credit, she became suspicious and immediately demanded that Edison explain what

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

668634.02/SF

-3-
COMPLAINT

1  was being done with the existing line of credit. Edison failed to provide any explanation

2  for his actions, and refused to provide documentation or any other information explaining

3  what he had done or what he was doing to manage Phleger's assets and pay her bills as

4  promised. In fact, Phleger came to learn that Edison had not obtained a higher equity line

5  of credit as represented to Phleger. Instead, in February 2006 Phleger learned that on or

6  about September 23, 2006, Edison knowingly and without Phleger's authorization obtained

7  a mortgage in the amount of $3,300,000, and a home equity line of credit in the amount of

8  $550,000 secured by Phleger's assets. The $3,850,000 was wired into an escrow account.

9       18.    On the same day – September 23, 2005 - the amount of $2,306,713.79 was

10  wired from the escrow account into the Wells Fargo bank account Edison held jointly with

11  Phleger. That amount constituted the proceeds from the mortgage and home equity line of

12  credit mentioned in paragraph 17 above.

13       19.    After September 26, 2005, Edison began writing checks and withdrawing

14  funds from the joint Wells Fargo account. During the period from September 20 to

15  October 18, 2005, Edison wrote checks against the joint account in amounts totaling

16  approximately $430,000. That amount includes checks totaling in excess of $375,000

17  made payable directly to Defendant PWMG.

18       20.    On or about October 17 and October 31, 2005, Edison caused to be

19  transferred from the joint account the amounts of $250,000 and $300,000, respectively,

20  into his private Wells Fargo bank account. Phleger is not an account holder, is not named

21  on the account to which those funds were transferred and did no authorize the transfer.

22       21.    On or about November 1 and November 3, 2005, Edison caused to be

23  transferred from the joint account the amount of $1,500,000 into his private Wells Fargo

24  Brokerage account. Phleger is not and account holder and is not named on the account to

25  which those funds were transferred.

26       22.    In less than four months, as a result of Defendants unauthorized transfer of

27  funds to his personal account, the balance of the joint Wells Fargo account had dropped

28  from $2,306,713 to a mere $2,668.42.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

1      23.    As of January 31, 2006, the principal balance on the home equity line of

2 credit for which Phleger is liable was $548,712.58 and $3,299,629.95 on the mortgage.

3      24.    Phleger has demanded that Edison return the money to the joint account

4 and/or pay off the mortgage and home equity line of credit with Countrywide Home

5 Loans.  Edison has failed and/or refused to do either, and has failed to return phone calls,

6 emails and faxes demanding that he return the funds.

7      25.    On information and belief, it is believed Edison is in the process of closing

8 his offices in Scottsdale, Arizona and Henderson, Nevada, and is in the process of leaving

9 the United States for the British Virgin Islands.

10                       **FIRST CAUSE OF ACTION**

11                 **(Conversion Against All Defendants)**

12      26.    Phleger realleges and incorporates by reference paragraphs 1 through 25 as

13 though fully set forth herein.

14      27.    Phleger alleges that Defendants wrongfully converted Phleger's assets for

15 their own benefit, in amounts believed to be in excess of two million dollars.

16      28.    Phleger has demanded payment from Defendants, and Defendants have

17 failed and/or refused to pay Phleger.

18      29.    Defendants retained Phleger's assets for Defendants' benefit.

19      30.    Defendants have no right or title to these assets, and has wrongfully

20 exercised dominion and control over those assets.

21      31.    As a direct and proximate result of Defendants' wrongful acts, Phleger has

22 been damaged in an amount in excess of the jurisdictional limits of this Court, to be proven

23 at trial.

24      32.    The forgoing conduct of Defendants was undertaken with oppression, fraud,

25 or malice, and Phleger is entitled to punitive damages in an amount to be proven at trial.

26

27

28

## SECOND CAUSE OF ACTION

### (Embezzlement Against All Defendants)

33.    Phleger incorporates by this reference paragraphs 1 through 32 as though fully set forth herein.

34.    By Defendants' conduct as described above, said Defendants embezzled assets belonging to Phleger.

35.    As a direct and proximate result of Defendants' wrongful acts, Phleger has been damaged in an amount in excess of the jurisdictional limits of this Court, to be proven at trial.

36.    The forgoing conduct of Defendants was undertaken with oppression, fraud, or malice, and Phleger is entitled to punitive damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Theft Against All Defendants)

37.    Phleger incorporates by this reference paragraphs 1 through 36 as though fully set forth herein.

38.    By their conduct as described above, said Defendants committed theft of funds belonging to Phleger.

39.    As a direct and proximate result of Defendants' wrongful acts, Phleger has been damaged in an amount in excess of the jurisdictional limits of this Court, to be proven at trial.

40.    The forgoing conduct of Defendants was undertaken with oppression, fraud, or malice, and Phleger is entitled to punitive damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Intentional Misrepresentation Against All Defendants)

41.    Phleger realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein..

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668634.02/SF

-6-
COMPLAINT

42.    In 2005, Edison represented to Phleger that he would obtain a higher line of credit, pay Phleger's bills by drawing down on that higher line of credit and provide funds to supplement her income.

43.    At the time Edison made the representations set forth above, Edison knew the representations to be false.  Phleger is further informed and believes, and thereon alleges, that the representations were made by Edison with the intent to induce Phleger to sign a power of attorney allowing Defendants control over Phleger's assets.

44.    At the time the representations were made and the Phleger took the actions herein alleged, Phleger was ignorant of the falsity of the representations and justifiably relied upon said representations because they were made by Defendants.  Furthermore, Phleger could not in the exercise of reasonable diligence have discovered the falsity of the representations.  In reliance on the representations of Edison, Phleger signed a power of attorney and allowed Defendants to exercise control over Phleger's assets.  If Phleger had known of the falsity of the representations of Defendants, Phleger would not have taken such action.

45.    As a direct and proximate result of Phleger's justifiable reliance upon the aforementioned representations, Phleger did not and could not, with the exercise of reasonable diligence, discover the true facts surrounding the misrepresentations.  It was not until February 2006 when Phleger first discovered that Defendants' representations were false.

46.    Phleger has been damaged by her reliance on the representations and fraudulent conduct of Defendants.  Phleger is informed and believes, and thereon alleges, that the true nature and extent of the damages that they suffered is presently unascertained, but in excess of $2 million dollars.  Phleger will seek leave to amend this Complaint to allege the true nature and extent of the damage when ascertained.

47.    Phleger is informed and believes, and thereon alleges, that the conduct of defendants in making misrepresentations was malicious, wanton and willful, and justifies an award of punitive damages.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668634.02/SF

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation Against All Defendants)

48.    Phleger realleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49.    In 2005, Edison represented to Phleger that he would obtain a higher line of credit, pay Phleger's bills by drawing down on that higher line of credit and provide funding to supplement her income.

50.    At the time Edison made the representations set forth above, Edison knew or should have known the representations to be false.    Phleger is further informed and believes, and thereon alleges, that the representations were made by Edison with the intent to induce Phleger to sign a power of attorney allowing Defendants control over Phleger's assets.

51.    At the time the representations were made and the Defendants took the actions herein alleged, Phleger was ignorant of the falsity of the representations and justifiably relied upon said representations because they were made by Defendants. Furthermore, Phleger could not in the exercise of reasonable diligence have discovered the falsity of the representations.    In reliance on the representations of Edison, Phleger signed a power of attorney and allowed Defendants to exercise control over Phleger's assets.    If Phleger had known of the falsity of the representations of Defendants, Phleger would not have taken such action.

52.    As a direct and proximate result of Phleger's justifiable reliance upon the aforementioned representations, Phleger did not and could not, with the exercise of reasonable diligence, discover the true facts surrounding the misrepresentations.    It was not until February 2006 when Phleger first discovered that Defendants' representations were false.

53.    Phleger has been damaged by her reliance on the representations and fraudulent conduct of Defendants.    Phleger is informed and believes, and thereon alleges, that the true nature and extent of the damages that they suffered is presently unascertained,

1   but in excess of $2 million dollars.  Phleger will seek leave to amend this Complaint to

2   allege the true nature and extent of the damage when ascertained.

3       54.    Phleger is informed and believes, and thereon alleges, that the conduct of

4   defendants in making misrepresentations was malicious, wanton and willful, and justifies

5   an award of punitive damages.

6                           SIXTH CAUSE OF ACTION

7                      (Elder Abuse Against All Defendants)

8       55.    Phleger realleges and incorporates by reference paragraphs 1 through 54 as

9   though fully set forth herein.

10      56.    Phleger was an elder over 65 years of age at all relevant times and within the

11  class of persons protected by Penal Code section 368.

12      57.    Each of the said Defendants had the care, custody, or control or stood in a

13  position of trust with Phleger.

14      58.    Defendants, and each of them, as care custodians, willfully caused or

15  permitted Phleger's assets to be unlawfully depleted.

16      59.    The conduct of Defendants, as alleged, constitutes neglect as defined in

17  Welfare and Institutions Code section 15610, et esq.

18      60.    The conduct of Defendants, as alleged, constitutes fiduciary abuse as defined

19  in Welfare and Institutions Code section 15610 et seq.

20      61.    The conduct of Defendants, as alleged, constitutes malice, fraud, reckless

21  and oppression, entitling Phleger to consequential and punitive damages in an amount to

22  be determined at trial.

23                          SEVENTH CAUSE OF ACTION

24          (Violation of Business & Professions Code § 17200 Against All Defendants)

25      62.    Phleger realleges and incorporates by reference paragraphs 1 through 61 as

26  though fully set forth herein.

27

28

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

66863-4.02/SF

-9-
COMPLAINT

63.    As part of Defendants' efforts to induce Phleger to enter into a financial consulting relationship, Defendants represented that they would only obtain an expansion of the existing line of credit, pay bills and pay related administrative expenses.

64.    Thereafter, Defendants obtained in excess of a $3 million loan collateralized by Phleger's assets without her permission or consent.

65.    Defendants' conduct as set forth above constitutes unfair and/or fraudulent business acts and/or practices.

66.    The unfair and/or fraudulent business acts or practices described herein present a continuing threat to Phleger and all other similarly situated in that Defendants will continue their unlawful conduct in an effort to induce third parties to contract with Defendants and thereafter convert their assets for their own use. Phleger and others similarly situated will suffer permanent, irreparable injury to their businesses and property unless these actions are restrained and enjoined. Phleger therefore seeks injunctive relief, restitution, disgorgement and other appropriate damages to be proven at trial.

## EIGHTH CAUSE OF ACTION

## (Declaratory Relief Against All Defendants)

67.    Phleger realleges and incorporates by reference paragraphs 1 through 66 as though fully set forth herein.

68.    A real and actual controversy has arisen and now exists between Phleger and Defendants regarding their rights and obligations to Phleger's assets.

69.    Phleger therefore desires an expedited judicial termination of the parties' respective rights, liabilities and obligations, and a declaration as to the propriety of the rights and obligations to and owing from the parties.

## NINTH CAUSE OF ACTION

## (Temporary Restraining Order/Preliminary Injunction/Permanent Injunction

## Against All Defendants)

70.    Phleger incorporates by this reference paragraphs 1 through 69 as though fully set forth herein.

71.    Unless restrained and enjoined by the Court, Phleger will be irreparably harmed.  Furthermore, Defendants will remain in control of and deplete Phleger's assets at a rate and in a manner not permitted by law.

72.    Injunctive relief is also necessary to prohibit Defendants from taking further action which is not in the best interests of Phleger.

73.    Injunctive relief is also appropriate to prevent a multiplicity of actions. Unless restrained and enjoined, Phleger will have to bring successive actions each time Defendants unreasonably deplete Phleger's assets.

74.    Phleger is therefore entitled to a temporary restraining order and preliminary injunction restraining Defendants from withdrawing or transferring funds from any bank, brokerage, or other accounts from which Defendants have transferred funds rightly belonging to Phleger.

## PRAYER

WHEREFORE, Phleger prays for relief as follows:

1.    A temporary restraining order, restraining Defendants from withdrawing or transferring funds from any bank, brokerage, or other accounts from which Defendants have transferred funds rightly belonging to Phleger;

2.    An Order to Show Cause why a preliminary injunction should not issue, enjoining Defendants from withdrawing or transferring funds from any bank, brokerage, or other accounts from which Defendants transferred funds rightly belonging to Phleger;

3.    That Phleger be awarded general damages in an amount to be proven at trial;

4.    That Phleger be awarded consequential damages in an amount to be proven at trial;

5.    That Phleger be awarded punitive damages in an amount to be proven at trial;

6.    For recoverable attorneys fees and costs of suit pursuant to statute; and,

7.    Such further relief as the Court may deem proper and just.

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668634.02/SF

-11-
COMPLAINT

## DEMAND FOR JURY TRIAL

Phleger hereby demands a trial by jury.

Dated: February 14, 2006

ALLEN MATKINS LECK GAMBLE &
MALLORY LLP

By: _Robert R. Moore_
ROBERT R. MOORE
Attorneys for Plaintiff
JEAN PHLEGER, an individual

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

668634.02/SF

-12-
COMPLAINT